# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) No. 20 CR 630 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| JUSTIN BUTLER, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

On March 14, 2020, Chicago Police Department ("CPD") officers stopped Defendant Justin Butler on the sidewalk and recovered a firearm from his waistband. On September 15, 2020, the government charged Butler with possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). Butler now moves to suppress the firearm as the fruit of his unlawful seizure. Because the officers had reasonable suspicion to stop Butler, the Court denies his motion [29].

## BACKGROUND[1]

On March 14, 2020 at approximately 3:00 p.m., Butler, a convicted felon, was standing with Gerald Buckley in front of a building located at 1927 South Homan Avenue in Chicago, Illinois, holding a clear plastic cup containing a brown liquid in one hand and a Red Bull can in the other. Buckley was also holding a clear plastic cup (Carreon BWC at 1:24) and testified that he was drinking Remy Martin, a dark alcohol, from the cup. That afternoon, in response to recent gang-related homicides and shootings, CPD Officers Michael Carreon, Anthony Fosco, and Jacob Garza were patrolling the area, which lies within CPD's Tenth District, in a marked

---

[1] The Court draws the facts in the background section from the parties' briefs and the exhibits attached thereto, including dash and body-worn camera ("BWC") footage, and the evidentiary hearing held on September 27, 2021. Gerald Buckley and CPD Officers Michael Carreon and Anthony Fosco testified at the hearing.

police car. Carreon was driving, with Garza sitting in the front seat and Fosco sitting in the back seat on the driver's side of the car. As he drove down the 1900 block of South Homan Avenue, Carreon testified that he observed Butler standing on the sidewalk, drinking the brown liquid from the clear cup. Buckley testified that when the officers first approached in their car, he and Butler were standing on the grass in front of the building, right next to the sidewalk; that they did not step onto the sidewalk until the officers got out of their car; and that Butler did not drink from the cup while on the sidewalk. When Carreon first observed Butler, based on his experience, he believed that the brown liquid in Butler's cup was alcohol, not Red Bull, because the color of the liquid did not match the color of Red Bull and he did not think it was logical to pour Red Bull into a cup instead of just drinking it out of the can. Fosco testified that once Carreon alerted the other officers that Butler was drinking on the sidewalk, Fosco also observed Butler standing on the sidewalk holding a clear plastic cup containing a brown liquid in one hand and a Red Bull can in the other. Fosco testified that he also believed the brown liquid was alcohol based on his experience in conducting multiple similar stops during which he determined that a dark liquid in a clear plastic cup was alcohol and because in his personal experience, Red Bull is a lighter color than the liquid in Butler's cup and people often consume Red Bull with alcohol.

      Carreon stopped the car to investigate whether Butler was drinking alcohol on a public way, in violation of Section 8-4-030(a)(1) of the Chicago Municipal Code. Carreon testified that he decided to do so because drinking alcohol on a public way can often lead to violence. As the officers stepped out of the car and began approaching the two men, Butler started walking away from the officers and emptied the brown liquid from his cup onto the sidewalk. (Carreon BWC at 1:22) Carreon and Fosco testified that as Butler poured the liquid out, Butler said he "was just

drinking Henny," which the officers believed to be a reference to Hennessy liquor. Doc. 51 at 10, 43. Carreon testified further that he could smell the spilled liquid as he was passing it on the sidewalk and that based on his training and experience, it smelled like alcohol. Carreon also testified that if an individual walks away as officers approach him, it gives the officers "reason to believe that he may be trying to conceal either himself, his identity, or an item." *Id.* at 11. Similarly, Fosco testified that Butler raised the officers' suspicion when he began walking away from them, causing Fosco to think that Butler may flee or that he was concealing something.

In response, Carreon quickly approached Butler to catch up with him, grabbed his arm, and began patting him down. (Fosco BWC at 1:38; Carreon BWC at 1:22; Garza BWC at 1:40) Carreon testified that he informed Butler why he was stopping him and then patted Butler down to ensure he did not have a weapon that could harm the officers during the investigatory detention. Within seconds, Carreon felt the handle of a firearm in the front of Butler's waistband. (Carreon BWC at 1:38; Fosco BWC at 1:52) Carreon alerted Fosco and Garza to the presence of a firearm and the officers attempted to place Butler into custody. (Fosco BWC at 1:53; Garza BWC at 1:58; Carreon BWC at 1:47) However, Butler gained control of the firearm, threw it on the sidewalk (Fosco BWC at 1:55), and yelled "get it" (Garza BWC at 2:09). Garza recovered the firearm, a Smith & Wesson Model SD40VE .40 caliber semiautomatic pistol bearing serial number FZL2306, and after a struggle, the officers handcuffed Butler. (Garza BWC at 2:10) The officers then transported Butler to the Tenth District police station, where he refused to answer any questions.

## ANALYSIS

Butler argues that the officers lacked reasonable suspicion to stop him and therefore, the Court must suppress the firearm recovered during the unlawful stop. In response, the

3

government asserts that given the totality of the circumstances, the officers had reasonable suspicion to stop Butler. The Fourth Amendment affords individuals the right to "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A brief police detention to investigate criminal activity constitutes a seizure under the Fourth Amendment and therefore must be reasonable. *United States v. Wilson*, 963 F.3d 701, 703 (7th Cir. 2020). To effectuate such a detention, officers must have "a reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot." *United States v. Patton*, 705 F.3d 734, 737 (7th Cir. 2013). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, --- U.S. ----, 140 S. Ct. 1183, 1187 (2020). In determining whether the Officers had reasonable suspicion to stop Butler, the Court must examine the "totality of the circumstances to see whether police 'ha[d] a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Wilson*, 963 F.3d at 703 (alteration in original) (citation omitted).

      Section 8-4-030(a)(1) of the Chicago Municipal Code makes it "unlawful for any person to drink any alcoholic liquor as defined by law on any public way." The Municipal Code defines "public way" as "any sidewalk, street, alley, highway or other public thoroughfare." Municipal Code of Chicago § 1-4-090(f). Butler argues that because he did not drink from the cup while on the sidewalk, the officers lacked any suspicion that he was violating the law and therefore, they unlawfully detained him. However, the government argues that the officers need not actually observe Butler drink alcohol on the sidewalk to suspect him of violating the law because other factors made it reasonable to believe Butler was drinking alcohol on the sidewalk.

4

The government asserts that regardless of whether the officers actually observed Butler drink from the cup, observing Butler holding a clear plastic cup containing a brown liquid that the officers reasonably believed to be alcohol, while he stood on the sidewalk, gave the officers reasonable suspicion to investigate whether he was consuming alcohol on a public way. *See Patton*, 705 F.3d at 737 (noting "[i]t was reasonable for the officers to surmise that the men were violating a local ordinance proscribing . . . the consumption of alcohol on the public way" after observing a group of men holding open cans of beer on a public way). Upon first seeing Butler, Carreon and Fosco both testified that based on their personal and professional experience, they believed the brown liquid in Butler's cup was alcohol. The Court finds this objectively reasonable based on the specific, articulable facts known to the officers at the time: Red Bull is lighter in color than the brown liquid in Butler's cup, people often consume Red Bull mixed with alcohol, and people often consume alcohol, as opposed to Red Bull, from plastic cups. Therefore, holding an open container of what the officers reasonably believed to be alcohol while standing on a public way likely gave the officers sufficient reasonable suspicion to stop Butler and investigate further. *See Montano v. City of Chicago*, 535 F.3d 558, 568–69 (7th Cir. 2008) (finding officers had probable cause to arrest suspects for drinking on a public way after merely observing them holding open beer bottles).

Butler's response in seeing the officers approach him only added to the officers' reasonable suspicion. The government contends that Butler's behavior of walking away and pouring out the liquid in his cup as the officers approached him added to their reasonable suspicion that Butler was consuming alcohol on a public way. *See United States v. Mays*, 819 F.3d 951, 957 (7th Cir. 2016) (finding that suspect leaving the scene when officer arrived was "suggestive of wrongdoing" and contributed to officer's reasonable suspicion of criminal activity

5

(citation omitted)). Carreon and Fosco both testified based on their experience that Butler's evasive behavior raised their suspicions. The Court finds it objectively reasonable for police officers to suspect that an individual was drinking alcohol on a public way when upon the officers' approach, the individual pours out the contents of his cup and walks away from them. *See United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010) (finding suspect's "slow[ ] retreat[ ] from the group while looking from side to side" and angling his body away from the officers was evasive and contributed to their reasonable suspicion that suspect was engaged in criminal activity). If it were simply Red Bull in his cup, Butler likely would not have poured it out and walked away from the officers. Carreon's suspicions reasonably increased when, as he got closer to Butler, he could smell alcohol and Butler admitted he was drinking "Henny," which Carreon reasonably believed to be a reference to alcohol.

Therefore, the Court finds that given the totality of the circumstances, Carreon had a particularized and objective basis for suspecting that Butler was violating Section 8-4-030(a) of the Chicago Municipal Code. *See, e.g.*, *Patton*, 705 F.3d at 737 (finding "officers had sufficient cause to stop and detain the group of men for investigatory purposes" where they observed the men on a public way holding open beer cans). Although Butler does not object to Carreon's frisk of Butler, the Court notes that given the totality of the circumstances, including the recent homicides and shootings in the area, Butler's actions in response to the officers, and the officers' reasonable suspicion that Butler had been consuming alcohol, the frisk was also lawful. *See id.* at 738–39 (upholding pat-down frisk in part because the incident occurred in an area that "gave police officers particular reason to be concerned about the possibility of gun-related violence;" the officers "had greater reason to be concerned that any one of the men might do something unpredictable, unwise, and dangerous" because the men were consuming alcohol; and the

6

suspect backed away from the officers upon their approach). Thus, the recovery of the firearm in Butler's waistband and his subsequent arrest were also lawful. *See, e.g.*, *Patton*, 705 F.3d at 741 (finding recovery of firearm during valid pat-down frisk lawful and upholding denial of motion to suppress); *Montano*, 535 F.3d at 568–69 (finding officers had probable cause to arrest suspects for drinking on a public way after officers observed them holding open beer bottles in the public way).

## CONCLUSION

For the foregoing reasons, the Court denies Butler's motion to suppress [29].

Dated: December 13, 2021

_____
SARA L. ELLIS
United States District Judge